UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARLENE FRAZIER, ) | |
| ) | |
| Plaintiff, ) | 19 C 5785 |
| ) | |
| vs. ) | Judge Gary Feinerman |
| ) | |
| ANDREW M. SAUL, Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

In 2016, Darlene Frazier filed claims for Supplemental Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits with the Social Security Administration, alleging disability beginning November 25, 2014. Doc. 9-6 at 2-17. The Commissioner denied Frazier's claims, Doc. 9-5 at 6-15, and then denied her request for reconsideration, *id*. at 18-25. Frazier sought, *id*. at 26-31, and received, *id*. at 49-71; Doc. 9-3 at 33-79, a hearing before an administrative law judge ("ALJ") pursuant to 20 C.F.R. §§ 404.935 and 416.1429. The ALJ denied the claims, Doc. 9-3 at 11-32, and Frazier sought review from the Social Security Appeals Council, Doc. 9-5 at 80-83, which denied her request for review, Doc. 9-3 at 2-7, making the ALJ's decision the final decision of the Commissioner. *See Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) ("Because the Administration's Appeals Council declined to review the ALJ's decision, we review the ALJ's decision as the final decision of the Administration."). Frazier timely sought judicial review pursuant to 42 U.S.C. § 405(g) and moves for judgment. Doc. 16. The motion is granted, and the case is remanded to the Commissioner for further proceedings.

1

**Background**

The following facts are taken from the administrative record.

**A.     Frazier's Medical Condition**

Frazier was fifty years old on her alleged disability onset date, November 25, 2014. Doc. 9-3 at 14, 39. She previously had worked as a clerical typist, nursing assistant, home healthcare aide, and rehab assistant. *Id*. at 39-45. Her treatment for the physical ailments underlying her claims began around September 2013, when doctors performed a C5-C6 diskectomy and interbody fusion to correct a herniated disc. Doc. 9-12 at 5. That marked the beginning of several years of treatment and procedures—including arthroscopic shoulder surgery, lumbar spinal surgery, repeated steroid injections, and opioid pain medication—for knee, shoulder, hip, back, and neck pain arising from a variety of conditions. Docs. 9-8 through 9-19.

Frazier's doctor prescribed her a cane in February 2017 as a precaution against falls. Doc. 9-16 at 37. At the June 20, 2018 hearing before the ALJ, Frazier testified that her doctor prescribed the cane because of balance issues arising from the fact that her knee and back would sometimes "feel like they're going to give out on" her. Doc. 9-3 at 52; *see also id*. at 54 ("My balance is really bad. So, that's why the cane is always good for me, too, because when I have to walk a distance, like from that parking lot to here, sometimes I'm like whoa. … [W]hen I don't have any [other alternative], I'll keep it with me at all times … ."); *id*. at 64 (Frazier testifying that before she was prescribed a cane, she could stand for only ten minutes before needing to lean or sit down). Frazier received additional care and new MRI imaging for knee and lumbar spinal problems in 2017 and 2018, including for pain resulting from a July 2017 car accident. Doc. 9-16 at 20-43; Doc. 9-17; Doc. 9-19 at 41, 44-46.

Frazier further testified that she experiences daily, chronic neck pain that radiates into her head and ears, causing problems turning, "swallowing," and "picking up anything." Doc. 9-3 at

47. She added that her lower back pain had, prior to her April 2018 surgery, progressed "to the point where [she] couldn't even walk," *id*. at 49, and that her balance was significantly impacted by her knee and back pain, *id*. at 50-52.

### B. The Commissioner's Decision

A claimant is disabled for purposes of the Social Security Act if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant has the burden of showing that her impairments prevent her from performing prior employment and any other job generally available in the national economy. *See* 42 U.S.C. § 423(d)(2)(A).

Following the June 2018 hearing, Doc. 9-3 at 33-79, the ALJ issued a decision finding that Frazier was not disabled and therefore ineligible for SSDI or SSI, *id*. at 26. The ALJ followed the five-step sequential evaluation process for determining whether an adult claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). The five steps are as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

3

*Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). RFC "is defined as 'the most [the claimant] can still do despite [her] limitations.'" *Id*. at 569 n.2 (first alteration in original) (quoting 20 C.F.R. §§ 404.1545(a), 416.945(a)). "A finding of disability requires an affirmative answer at either step three or step five. The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). At the fifth step, the Commissioner "must present evidence establishing that the claimant possesses the [RFC] to perform work that exists in a significant quantity in the national economy." *Weatherbee*, 649 F.3d at 569 (footnote omitted).

At step four, the ALJ determined that Frazier was not engaging in "substantial gainful activity" (step one); that her "mild degenerative joint disease of the left knee[,] mild degenerative disc disease of the lumbar spine[,]status post-surgery two months before the [June 2018] hearing[,] degenerative disc disease of the cervical spine[,] obesity[,] status post right rotator cuff repair[,] asthma[,] depression[,] and anxiety" were "severe impairments" (step two); and that those impairments were not listed in or equal to a listing in 20 C.F.R. § 404, subpart P, app. 1 (step three). Doc. 9-3 at 17-19.

At step four, the ALJ found that Frazier had the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). Specifically, the ALJ determined that Frazier could perform "simple, routine and repetitive tasks," provided that she had "no interaction with the public and only occasional interaction with co-workers and supervisors" and with these physical restrictions: "no climbing ladders, ropes or scaffolds; occasional stooping, kneeling, crouching, crawling and climbing ramps or stairs; frequent overhead reaching bilaterally; and frequent fingering bilaterally." *Id*. at 19. The ALJ's RFC finding also stated that Frazier should "avoid

4

concentrated exposure to extreme cold and heat, humidity, vibration, respiratory irritants … , poorly ventilated areas, dangerous moving machinery and unprotected heights." *Ibid*.

In so finding, the ALJ concluded that Frazier's hearing testimony about the "intensity, persistence and limiting effects of [her] symptoms [was] not entirely consistent with the medical evidence and other evidence." *Id*. at 20. To support this conclusion, the ALJ reasoned:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the evidence generally does not support the alleged loss of functioning. The claimant testified that she is unable to work due to knee, neck, back and shoulder pain. The record does not show that she is precluded from working. Albeit, I agree that she cannot perform her past work. The claimant's reliance on her daughters to cook larger meals is not corroborated in the record. Neither is the allegation that she has difficulty walking into a store from a parking lot. The diagnostic evidence does not support her being so limited.

Doc. 9-3 at 21. As for why he discounted Frazier's testimony that she can walk only fifteen minutes before having to sit down, the ALJ noted that, until recently, she had sought only conservative treatment for pain. *Ibid*. As for why he discounted Frazier's testimony that "she has fallen a few times due to her balance being off," the ALJ reasoned that "there is no evidence of continuing symptoms." *Ibid*. The ALJ did not explain why he did "not find that [Frazier] would have needed a cane on an ongoing basis during the period at issue." *Ibid*.

The ALJ reached his RFC finding without the benefit of expert medical review of Frazier's most recent MRIs. In 2017 and 2018, Frazier had additional knee and spine MRIs that indicated significant degenerative changes. Doc. 9-16 at 20-43; Doc. 9-17; Doc. 9-19 at 41, 44-46. The last medical expert opinions on which the ALJ relied, which were completed in early March 2017, Doc. 9-4 at 50-84, did not consider those 2017 and 2018 MRIs, and the ALJ did not submit them to an expert. Doc. 25 at 6 (the Commissioner conceding that "the ALJ considered the evidence that was submitted after the state agency physicians reviewed the record," but arguing that he "was not required to obtain medical expert testimony"). Instead, the ALJ

5

independently considered those MRIs and concluded that they did not alter his RFC finding. Doc. 9-3 at 23-25.

Based on Frazier's RFC to perform light work, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Frazier] [could] perform" (step 5), thus rendering her not disabled. *Id*. at 25; *see* 20 C.F.R. §§ 404.1569, 416.969. Based on the vocational expert's testimony, the ALJ found that "[e]ven if the claimant needed to use a cane as she alleged, [she] could perform the work of inspector." Doc. 9-3 at 26. The ALJ premised that finding on the vocational expert's testimony that working as an inspector involves only "standing at a work station." *Id*. at 75. The vocational expert also testified, however, that "if one needs to use a cane while standing," as opposed to only while ambulating, that would "eliminate any light work." *Id*. at 77.

## Discussion

Section 405 of the Social Security Act authorizes judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g). The court reviews the Commissioner's legal determinations *de novo* and his factual findings deferentially, affirming those findings so long as they are supported by substantial evidence. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"; it "must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (internal quotation marks omitted). If the court finds that the Commissioner's decision is not supported by substantial evidence, "a remand for further proceedings is the appropriate remedy unless the evidence before the court compels an award of

6

benefits." *Briscoe*, 425 F.3d at 355. The court "cannot uphold an administrative decision that fails to mention highly pertinent evidence," *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), or that "is based on legal error," *Collins v. Astrue*, 324 F. App'x 516, 519 (7th Cir. 2009).

In addition to satisfying these standards, the Commissioner's final decision must build an "accurate and logical bridge from the evidence to [the] conclusion so that … a reviewing court … may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (internal quotation marks omitted); *see also Briscoe*, 425 F.3d at 351 ("In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) (holding that the Commissioner must "articulate at some minimal level her analysis of the evidence to permit an informed review") (alteration and internal quotation marks omitted). To build a logical bridge, the Commissioner must "sufficiently articulate his assessment of the evidence to assure [the court] that he considered the important evidence and to enable [the court] to trace the path of his reasoning." *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (alteration and internal quotation marks omitted). The court "cannot uphold a decision by an administrative agency … if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

Frazier challenges the Commissioner's decision on several grounds, arguing, among other things, that the ALJ erred in: (1) assessing without the assistance of a medical expert the 2017 and 2018 MRIs revealing lumbar spinal and knee impairment, Doc. 16 at 11-12; (2) finding that Frazier did not need a cane to ambulate, stand, or balance, *id.* at 14-16; and (3) not crediting

7

Frazier's subjective testimony concerning the intensity, persistence, and limiting effects of her pain and symptoms, *id*. at 17-22.

**I.      2017-2018 MRIs**

Frazier contends that the ALJ erred when he did not submit to a medical expert new and potentially decisive medical evidence—the 2017 and 2018 MRIs—related to her lumbar spinal and knee impairment. Doc. 16 at 11-12. "ALJs may not rely on outdated opinions of agency consultants 'if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.'" *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) (quoting *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)); *see also Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (holding that the ALJ erred by evaluating medical evidence of "significant, new, and potentially decisive findings" himself "[i]nstead of consulting a physician"). If new medical evidence, like an MRI, is potentially decisive, the ALJ must submit it to medical scrutiny. *See McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) ("We agree … that the ALJ impermissibly assessed the MRI report on his own without the assistance of a medical expert. We have said repeatedly that an ALJ may not play doctor and interpret new and potentially decisive medical evidence without medical scrutiny. An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments.") (alteration, citation, and internal quotation marks omitted); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) ("Fatally, the administrative law judge failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence.").

Frazier argues that 2017 and 2018 MRIs are potentially decisive and that it was error for the ALJ to evaluate them on his own. The court need not recount Frazier's detailed explanation of the significance of the MRIs, Doc. 16 at 11-12, because the Commissioner does not dispute

8

that they were "potentially decisive" evidence, thereby forfeiting the point. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."). The Commissioner argues only that it was proper for the ALJ to evaluate that evidence himself without medical expert testimony. Doc. 25 at 6-7. According to the Commissioner, the ALJ's approach was proper because an ALJ has a responsibility to independently evaluate whether medical experts' opinions are supported by the underlying medical evidence. *Ibid*. That misses the point—that it would be improper for an ALJ to fail entirely to examine relevant medical evidence does not mean it is appropriate for an ALJ to reach conclusions from such evidence without the aid of medical expertise. The ALJ did the latter here, and remand is warranted so that the ALJ may assess whether the 2017 and 2018 MRIs are potentially decisive and, if so, consider their import with the benefit of a medical expert's assessment.

## II. Frazier's Need for a Cane

Frazier contends that the ALJ erred in finding that she does not need a cane to ambulate or to balance while standing. Doc. 16 at 14-16. "[A]lthough an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting [his] ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014); *see also Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) ("Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected.").

The ALJ provided no explanation for concluding that Frazier would not "have needed a cane on an ongoing basis during the period at issue," Doc. 9-3 at 21, despite her testimony to the contrary, *id*. at 52, 54, 64, and even though her doctor prescribed her a cane, Doc. 9-16 at 37. The ALJ's conclusory statement rejecting Frazier's testimony and her physician's prescription

9

cannot be described as "confront[ing]" the evidence or "explain[ing] why it was rejected." *Indoranto*, 374 F.3d at 474. And that evidence was critical because the ALJ should have found Frazier disabled if she could not perform light work, and the vocational expert testified that Frazier could not perform any light work if she needed to use a cane while standing. Doc. 9-3 at 75-77. Remand accordingly is warranted for the ALJ to properly consider whether and to what extent Frazier relies on a cane. *See Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013) (remanding where "the ALJ ignored virtually all the evidence in the record demonstrating [the claimant's] need for a cane").

### III. Frazier's Subjective Testimony Regarding Her Symptoms

Frazier contends that the ALJ erred in finding that her testimony concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the evidence. Doc. 16 at 17-22. The ALJ's refusal to credit Frazier's subjective testimony is the functional equivalent of a credibility determination against her. An ALJ's credibility determination is "entitled to special deference because the ALJ is in a better position than the reviewing court to observe a witness." *Briscoe*, 425 F.3d at 354. A reviewing court may "overturn a credibility determination only if it is patently wrong," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), or if the ALJ fails to "justif[y] her conclusions with reasons that are supported by the record," *Richards v. Astrue*, 370 F. App'x 727, 731 (7th Cir. 2010); *see also Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Adequate justification requires that "the ALJ's determination or decision regarding claimant credibility must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (internal quotation marks omitted). That a claimant's testimony about the limiting effects of her

10

symptoms is "uncorroborated … [is] not in itself a reason to think she [is] exaggerating her condition." *Goins*, 764 F.3d at 679. The Seventh Circuit has specifically admonished ALJs for discounting a claimant's testimony with the boilerplate statement that, although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms … , the claimant's statements … are not credible to the extent they are inconsistent with the above [RFC] assessment." *Id.* at 681 (alterations in original and internal quotation marks omitted).

The ALJ here did not use the "are inconsistent with the above [RFC] assessment" boilerplate, but did state that Frazier's statements about her symptoms "are inconsistent because the evidence generally does not support the alleged loss of functioning." Doc. 9-3 at 21. Because the ALJ did not identify any evidence contradicting Frazier's subjective testimony, the difference between the prohibited boilerplate and what the ALJ wrote is merely semantic. In either case, "[t]he implication is that the assessment (of the claimant's [RFC]—that is, ability to work) precedes and may invalidate the claimant's testimony about … her ability to work," when in fact "that testimony should be an input into a determination of ability to work." *Goins*, 764 F.3d at 681. Here, "[i]t seems that the [ALJ] improperly and irrevocably decided … that the plaintiff was capable of full-time work, and having made that decision naturally had to brush aside the plaintiff's testimony, including her testimony about the difficulty she has in walking and in standing." *Ibid*. The ALJ appeared to conclude that, because he could not identify portions of the medical record affirmatively corroborating Frazier's testimony, he was entitled to discount that testimony without the further step of clearly identifying specific inconsistencies between it and the medical evidence. Doc. 9-3 at 21. That was error, and remand is appropriate so that the ALJ can identify what specific portions of the record, if any, contradict Frazier's

11

testimony as to the intensity, persistence, and limiting effects of her symptoms. If no evidence does so, the ALJ should evaluate Frazier's testimony in determining her ability to work.

This conclusion is not undermined by the fact that the ALJ discounted Frazier's testimony on the ground that she "had conservative treatment for pain until recently when she had back surgery." *Ibid.* "While the ALJ may consider conservative treatment in assessing the severity of a condition, he should cite medical evidence about what kind of treatment would be appropriate." *Williams v. Berryhill*, 2017 WL 4699242, at *5 (N.D. Ill. Oct. 19, 2017)) (internal quotation marks omitted); *see also Buechele v. Colvin*, 2013 WL 1200611, at *17 (N.D. Ill. Mar. 25, 2013) ("[T]he ALJ discounted Claimant's credibility because he received only conservative treatment for his conditions. But there is no evidence that more aggressive treatment was indicated for Claimant's condition") (citation omitted). The ALJ here made no effort to do so, and remand on this point thus remains appropriate. *See Williams*, 2017 WL 4699242, at *5 (remanding where the ALJ relied on "his own lay opinion that … some other form of more frequent or aggressive treatment[] would have been pursued if Plaintiff's symptoms were as severe as alleged" in discounting the claimant's description of his symptoms, and instructing the ALJ to "ask why Plaintiff's treatment was not more aggressive, and if the ALJ determines that the treatment was conservative, … [to] discuss why more aggressive treatment would have been appropriate"); *Buechele*, 2013 WL 1200611, at *17 (remanding where the ALJ, in rejecting the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, did not "point to specific inconsistencies" in the claimant's testimony and relied on the claimant's conservative treatment without identifying evidence that "more aggressive treatment was indicated").

**Conclusion**

Frazier's motion for judgment is granted. Although Frazier asks the court to remand this matter to the Commissioner for an award of benefits, Doc. 16 at 22, "[a]n award of benefits is appropriate … only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). The record here does not have the requisite degree of clarity to warrant a remand for an award of benefits, so the case is remanded to the Commissioner for further proceedings consistent with this opinion.

July 22, 2020

_____
United States District Judge

13